UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:23-CR-129 (VAB) |
| | : | |
| v. | : | |
| | : | October 14, 2024 |
| TYREE THOMAS | : | |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

Starting in August 2021 through December 2021, the defendant, Tyree Thomas, a twice-convicted felon himself, hatched a plan to transport two-dozen illegally purchased firearms from Georgia into Connecticut, which he provided to other felons, including gang members, while pocketing the proceeds of those sales for himself. While some of those firearms have been recovered—in connection with multiple shootings, murders, and a suicide—several more remain unaccounted for within our community, in a crime that will continue to severely impact our community for years to come.

The defendant's conduct is serious, and prior terms of imprisonment have not deterred any future conduct—Mr. Thomas has only gotten more resourceful, and his crimes have become more dangerous. He must be met with meaningful censure. As set forth below, a sentence at the top of the Guidelines range of 51 months of imprisonment followed by a three-year term of supervised release is sufficient but not greater than necessary to accomplish those various goals of sentencing.

I.  **THE OFFENSE AND RELEVANT CONDUCT**

The facts set forth in the Presentence Report regarding the defendant's offense conduct do not appear to be in dispute but are summarized herein with additional detail.

In May 2022, investigators the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") identified a series of firearms being recovered in and around Bridgeport, Connecticut, that had been purchased by the same individual out of Georgia. During the resulting investigation,

investigators determined that the defendant, Tyree Thomas, a convicted felon from Bridgeport, had enlisted his sister to purchase 24 different firearms for him between August 2021 and December 2021, which he would transport to Connecticut and sell to others for a profit. Recipients of Thomas's firearms included both juveniles and gang members, and several of the firearms were located in connection with shootings, including at least one murder and one suicide.

### A. Possession by Juveniles and Young Adults

On March 24, 2022, during a traffic stop in Bridgeport's East Side, a juvenile driving with an expired vehicle registration was found in possession of one of Thomas's firearms, specifically, a Sarsilmaz model B6C, 9mm firearm purchased on December 17, 2021. *See* PSR ¶ 8.

On May 23, 2022, during a motor vehicle stop in Bridgeport of 18-year-old Stephen Brockenberry who had been involved in a hit and run accident, investigators recovered a Glock, model 21, .45 caliber pistol with an extended magazine that had been purchased as part of Thomas's trafficking activities on December 5, 2021. *See* PSR ¶¶ 21-23.

### B. Possession by a Felon

On April 20, 2022, during the arrest of Rahshim Carter within the Green Homes housing complex in Bridgeport, officers recovered an FN model FNS-40, .40 caliber pistol purchased on February 22, 2022 as part of Thomas's trafficking scheme. *See* PSR ¶¶ 23-26. At the time, Carter had been on federal supervised release following a conviction for possession of a firearm as a felon for which he received a sentence of 50 months imprisonment followed by 3 years of supervised release from Judge Underhill on January 30, 2015. *See United States v. Rahshim Carter*, No. 3:22-CR-132 (SRU) and *United States v. Rahshim Carter*, No. 3:14-CR-51 (SRU). Carter also has an extensive criminal history that involves numerous state convictions and prior federal drug convictions. At the time of his arrest, in addition to possessing the firearm from Thomas, Carter

was in possession of narcotics including heroin, crack cocaine and counterfeit pills, all packaged for street-level sales along with a large amount of U.S. currency.

### C. Possession in Connection with Shootings, Murders, and a Suicide

On August 13, 2022, investigators recovered a Taurus, Model G3C, 9mm pistol in connection with a robbery of a group of seven friends as they prepared to enter a lounge at 250 Knowlton Street in Bridgeport. *See* PSR ¶ 16. Three of friends were shot during the robbery, one of which subsequently passed away from his injuries. The individual charged with that murder, Steven Hutchinson, was chased from the scene by officers and found in possession of the Taurus firearm. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

On June 1, 2022, investigators recovered a Smith & Wesson, model SD40VE, .40 caliber pistol from Glenn Pettway, who used it to commit suicide during a standoff with police in Tennessee who were attempting to locate him based on pending charges against Pettway for committing a murder of a 28-year-old female in Bridgeport in May 2022. *See* PSR ¶¶ 27-29. The Smith & Wesson firearm trafficked into Connecticut by Thomas shortly after its purchase on January 12, 2022 was connected through NIBIN analysis to both the earlier murder and Pettway's suicide. *See* PSR ¶ 30.

On March 20, 2023, investigators from Meriden Police Department recovered a HS Produkt model XDS .45 caliber pistol purchased on February 10, 2022 as they responded to a "shots fired" incident across multiple crime scenes. At one of the shooting scenes, investigators located Shawn Mojica, who was later pronounced deceased. Mojica was found in possession of

the HS Produkt firearm that had been trafficked by Thomas. NIBIN analysis connected the firearm to shell casings recovered from one of the crime scenes, indicating that the firearm had been discharged during the "shots fired" incident.

### D. Other Firearm Recoveries

On October 25, 2022, investigators recovered a HS Produkt model XDS .45 caliber pistol that was identified as one of the firearms trafficked by Thomas, from an individual named James Howard during a motor vehicle stop of a white Jaguar SUV with Maryland license plates in the East Side of Bridgeport.

While nine of the firearms trafficked by Thomas have been recovered, fifteen presently remain unrecovered and unaccounted for. In other words, Mr. Thomas's criminal conduct will undoubtedly continue to unleash havoc on our community, long after his own sentencing, and similarly, the true effect of his crime—while likely never to be fully known—undoubtedly will continue to victimize members of our community, for a long time to come.

## II. THE GUIDELINES CALCULATION

### A. The Plea Agreement

As set forth in the Presentence Report, the parties entered into a written plea agreement which outlined certain statutory and Guideline stipulations reached between the parties. Specifically, the parties agreed that the defendant's base offense level under U.S.S.G. § 2K2.1 (a)(2) was 24 because the defendant committed the instant offense after sustaining at least two controlled substance felonies. Four levels were added under U.S.S.G. § 2K2.1 (b)(1)(B) because the offense involved between 8 and 24 firearms, four levels were added under § 2K2.1 (b)(5) because the defendant engaged in the trafficking of firearms, and four levels were added under § 2K2.1 (b)(6)(B) because the defendant transferred a firearm with knowledge, intent, or reason to believe that it would be

used or possessed in connection with another felony offense. With three levels for acceptance of responsibility, the total offense level contemplated by the plea agreement was 33, and with a Criminal History Category III, the parties determined the resulting Guidelines range to be 168 to 210 months of imprisonment, which due to the statutory maximum became 120 months of imprisonment, as well as a fine range of $35,000 to $350,000 and a supervised release term of one to three years.

      B.     **The U.S. Probation Office's Calculation**

According to the U.S. Probation Office, and utilizing the November 1, 2023 Guidelines Manual which was not yet in effect at the time of the parties' initial plea negotiations, the defendant's base offense level was determined to be 14 under U.S.S.G. § 2K2.1(a)(6)(A) because the defendant committed the instant offense while being aware that he was a prohibited person that could not possess firearms, with six levels added under § 2K2.1(b)(1)(C) because the offense involved 25 to 99 firearms, and two additional levels added under USSG §2K2.1(b)(5)(B) because the defendant transported, transferred, sold, or otherwise disposed of a firearm ammunition knowing or having reason to believe that such conduct would result in the receipt of the firearm or ammunition by an individual who was a prohibited person, and four levels added under USSG §2K2.1(b)(6)(B), because the defendant possessed or transferred a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. With three levels for acceptance of responsibility, the U.S. Probation Office determined the total offense level to be 23, and with a Criminal History Category of II, the resulting Guidelines range would be 51 to 63 months of imprisonment, a fine range of $20,000 to $200,000 and a term of supervised release of 1 year to 3 years. *See* PSR ¶¶ 55, 114, 126, 131.

### C. The Resulting Guidelines Calculation

In light of the amendments made to the U.S. Sentencing Guidelines which the parties agree control the calculation of the proper Guidelines applicable to Mr. Thomas at the time of his sentencing, the Government does not object to the U.S. Probation Office's calculation, with the following exception. Based on the facts presented to the U.S. Probation Office, the number of firearms that the Government can prove were trafficked into the community by Mr. Thomas is 24, as contemplated by the parties' plea agreement, not 25 as suggested by the PSR. For that reason, the Government submits that the six-level increase within the U.S. Probation Office's calculation should remain a four-level increase. As a result, the Government believes that the total offense level should be 21. Based on the U.S. Probation Office's determination that Mr. Thomas is a Criminal History Category II, the resulting Guidelines range is 41 to 51 months of imprisonment, a fine of $15,000 to $150,000, and a term of supervised release of 1 year to 3 years. The Government submits that a sentence at the top of the range, at 51 months of imprisonment, is sufficient but not greater than necessary to accomplish the various sentencing goals.

### III. THE LAW

After the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005) rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006); *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the

criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

### IV. DISCUSSION

#### A. Nature and Circumstances of the Offense and Seriousness of the Offense

Mr. Thomas's crime is undoubtedly a serious one. Within a period of five short months, Mr. Thomas flooded the streets of Bridgeport with weapons—providing twenty-four firearms to felons, gang members, and anyone else willing to pay for them. While Mr. Thomas claims that he did so "for protection," the evidence shows that he clearly did it for profit. And the results of his crime have already been disastrous. As set forth above, Mr. Thomas's firearm have been connected to murders, suicides, shootings, and have been found on a felon, a juvenile, a young adult, and others in Bridgeport and beyond. Indeed, the impact of Mr. Thomas's offense has not even been fully felt by the community. Fifteen additional firearms trafficked into Connecticut by Mr. Thomas have not been located. That's at the *very* least fifteen more chances of carnage or death, and fifteen more people victimized or worse.

In fact, many of the friends and acquaintances that Mr. Thomas armed with weapons as part of his scheme are the most likely to engage in additional crimes. In February 2023, the mayors of New Haven, Bridgeport, Hartford and Waterbury—cities that are violent outliers in a state with one of the lowest crime rates in America—asked legislators to enact a series of laws limiting the

availability of bail for gun crimes. According to news reports and related press releases, their request was "based on statistical analysis of gun crimes that showed most gun criminals are chronic reoffenders who are committing second and third offenses while released on bail or probation." Edmund H. Mahoney, *CT mayors wrestle with what data show is at root of gun violence: Chronic repeat offenders*, Hartford Courant (Feb. 20, 2023), *available at* https://www.courant.com/news/connecticut/hc-news-conn-city-gun-crime-stats-legislation-20230220-j4oplrb27rccpglhwzthdoghh4-story.html.

According to those statistics, the gun criminals are a relatively small, violent group with felony records. Data provided by Hartford for 2022 showed that "of the 44 people arrested in Hartford for murders or attempted murders with guns, 39% had charges pending from other crimes but had been released from custody after posting bond. Fifteen percent were on probation. Five percent were on parole. Of those arrested last year, 39% had prior convictions for violent felonies or gun crimes." *Id*. *See also* Mark Pazniokas, *Mayors and moms call for reforms to target repeat gun offenders*, CT Mirror (Feb. 14, 2023) *available at* https://ctmirror.org/2023/02/14/ct-gun-violence-reform-proposal/ (outlining requested reforms to bail rights for repeat gun offenders that were "driven by data that indicate an outsize percentage of gun crimes in [Bridgeport, New Haven, and Waterbury] are committed by young men free on bond or out of prison on probation or parole").

As set forth above, individuals to whom Mr. Thomas was trafficking firearms fall squarely within this group of dangerous, repeat firearms offenders, and unfortunately, many of them already used Mr. Thomas's firearms to commit additional crimes. In this regard, the seriousness of Mr. Thomas's offense cannot be overlooked.

**B.      History and Characteristics of the Defendant**

When Mr. Thomas decided to sell dozens of illegal firearms into the streets of Bridgeport, he already had a substantial adult criminal history that included numerous arrests and convictions as a 21-year old for selling drugs, for assault and reckless endangerment of others, reckless driving, and a host of probation violations. *See* PSR ¶¶ 59-63. He continued committing those same offenses throughout his early 20s, including numerous drug trafficking offenses for which he repeatedly received suspended sentences, or mostly suspended sentences, from the state courts presiding over those cases. *See, e.g.,* PSR ¶¶ 64-68. While Mr. Thomas completed his last custodial sentence in July 2017 following a four-year term of imprisonment (his longest in the state system) and later completed a three-year term of probation in July 2020, only two years later, Mr. Thomas had not only purchased a firearm for himself but began to sell firearms back into the community to which he had been released, leading up to the instant offense here. In that regard, the principle of incremental punishment supports a sentence in this case beyond the four-year sentence that in no way deterred Mr. Thomas from engaging in criminal conduct.

At the same time, the Government acknowledges the significant challenges present during Mr. Thomas's upbringing in Bridgeport. Mr. Thomas's childhood was undoubtedly traumatic, having been exposed to events, such as shootings and drug trafficking that no child should have to endure. Indeed, defense counsel is correct that portions of Bridgeport are continually submersed in a "legacy of violence" that "continues to haunt" its occupants. But unfortunately, his history and his experiences are not unique. Many years beyond Mr. Thomas's own childhood in Bridgeport, children and their families living in Bridgeport today continue to suffer at the hands of drug dealers, firearms traffickers, and gang violence. Mr. Thomas, once the victim, has now become the perpetrator.

Similarly, the claims that Mr. Thomas simply "believed that he needed to carry a firearm in order to protect himself in Bridgeport" is belied by the fact that at the time of his arrest in Florida—the place where intends to return upon his release from prison to live a crime-free life—he was found in possession of a Glock 9mm magazine containing eight rounds of 9mm luger ammunition, a speed loader, and Glock documents, even though at the time of his arrest, he was convicted felon who was not able to possess such items. *See* PSR ¶ 36.

In addition, the claim that Mr. Thomas's crimes were "unsophisticated" and "naïve" and not "motivated by ill intent" are red herrings that afford no further basis for a downward departure in this case. A crime can be serious without being complex. Here, it was very simple. Mr. Thomas could not lawfully acquire a gun as a felon, so he found (or pressured) someone to get it for him. He then quickly realized that many of his friends also could not get guns as felons, so he started getting guns for them, while churning a handsome profit for himself in return. While this might not have been sophisticated—it shows a level of resourcefulness and dedication that Mr. Thomas had been unwilling to direct at any lawful endeavors. For these reasons as well, a sentence at the top of the Guidelines range is the appropriate sentence here.

Finally, Mr. Thomas's offenses will undoubtedly continue to affect others. Many people within the community have already been impacted by Mr. Thomas's crime, and many more may eventually suffer the same fate. Mr. Thomas's second child, is undoubtedly one of those victims. Both the PSR and Mr. Thomas's own sentencing memorandum demonstrate that knowing that he was headed towards a potentially significant jail sentence, Mr. Thomas and his spouse chose to start a family. While this is one of the many characteristics informing the Court's sentencing decision, it should not be the only one. Given the serious nature of the offense and the long criminal history that preceded this offense, Mr. Thomas's sentence needs to be significant.

### C. **Promoting Respect for the Law, Protection of the Public, and Deterrence**

The sentence imposed should also provide adequate deterrence, protection for the public, and it must promote respect for the law. Mr. Thomas is a convicted felon many times over who was fully aware that he could not legally possess a firearm, and similarly knew through his own first-hand experience the dangers of firearms in the community. Yet, he persisted in owning firearms and giving them to others. Indeed, his prior arrests and terms of imprisonment have done nothing to deter him from committing additional offenses, nor have they motivated him to seek gainful employment. The Government submits that a period of incarceration at the top of the Guidelines would serve the purpose of deterring Mr. Thomas from engaging in further criminal activity. Simultaneously, the sentence would hopefully provide Mr. Thomas with the necessary treatment and resources to help him achieve his next step of re-entering the community, under a period of supervision, as a law-abiding citizen.

### V. CONCLUSION

For the reasons stated herein and on the full record of this case and an assessment of the factors outlined in 18 U.S.C. § 3553(a), the Government respectfully submits that in light of the seriousness of the offense, the defendant's history and characteristics, and the need of the sentence to provide just punishment, respect for the law and to deter the defendant and others from engaging in criminal activity, the sentence which is sufficient by not greater than necessary to accomplish those various sentencing goals is a term of imprisonment at the top of the Guidelines range, approximately 51 months of imprisonment.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Lauren C. Clark*
LAUREN C. CLARK
Federal Bar No. phv09365
ASSISTANT U.S. ATTORNEY
1000 Lafayette Boulevard, 10th Floor
Bridgeport, CT 06604
Tel: (203) 696-3000